IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | Criminal Action Number |
| **GARY WHITE,** | ) | **2:07-cr-0448-UWC-HDG** |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION ON
DEFENDANT'S PENDING MOTIONS**

Pending before the Court are four post-trial motions: (1) a Renewed Motion for Judgment of Acquittal, (Doc. 40); (2) a Motion to Vacate the Judgment based on the change of division to the Middle District of Alabama, (Doc. 41); (3) a Motion for a New Trial, (Doc. 42); and (4) a Motion to Dismiss the Indictment (Doc. 50.)

For the reasons which follow, the second motion will be granted, and the others denied.

**A. The Renewed Motion for Judgment of Acquittal**

There has been no change in either the facts or the law since the Court denied the Defendant's Motion for Judgment of Acquittal at the close of all the evidence. Then, as now, the Court was and is firmly convinced that ample evidence supports the jury's decision that the Government proved the Defendant guilty beyond a

reasonable doubt of the crimes charged in Counts 1-9 of the superceding indictment.

## B. The Motion for a New Trial

In his Motion for a New Trial, the Defendant first contends that the weight of the evidence does not support the verdict. As indicated earlier, the Court disagrees.

The Defendant next contends that the Court erred by excluding the first paragraph of a Cooperation Agreement between the Government and co-conspirator Sohan Singh. The Government insisted that if a part of the agreement came into evidence, the entire document should be received. Under the longstanding and well-understood "rule of completeness," the Court sustained the Government's objection. *See* Fed. R. Evid. 106.[1]  There is simply no merit to the Defendant's contention.

The final specific ground of the Defendant's motion is that the Court erred when it overruled his objection to that part of the Government's summation in which it pointed out that the Defendant had used his official letterhead to make favorable recommendations of Mr. Singh's company to other agencies. The Court declined to give a curative instruction on this matter, as it concluded that the argument did not

---

[1] Rule 106 provides that

> [w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

*Id.*

unfairly prejudice the Defendant. In its subsequent instructions to the jury, the Court explained that the Defendant was only on trial for the crimes set forth in the indictment. There was no error in the Court's disposition of this issue.

### C. The Motion to Dismiss the Indictment for Vindictive Prosecution

Based on the affidavit of his wife, the Defendant contends that he is being vindictively and selectively prosecuted in this case by United States Attorney Alice Martin. Mrs. White swears as follows:

> On a particular Monday morning in early May of 2005, my husband received a telephone call from Bill Long, acting as an agent of the federal government. Mr. Long advised my husband . . . that he was required to bring with him all of his calendars or records of a particular year . . . .
>
> . . . .
>
> Upon our arrival at the federal courthouse [in Montgomery], we both were required to sign in. We were met by Mr. Long, who escorted us to a room where we were joined by another agent of the federal government, whose name I do not recall at this time . . . .
>
> My husband was informed that he had been subpoenaed because his name came up in connection with a meeting that was supposed to have occurred between Gov. Siegelman and Mr. Scrushy. My husband was instructed by the agents that they wanted him to testify that the meeting took place on a particular and specific date which was stated to him by the agents. My husband informed the agents that he had no idea of the specific date when the meeting took place, that he recalled having been asked to arrange an appointment between Gov. Siegelman and Mr. Scrushy, and that he was present only at the introduction, then departed without participating in or witnessing any specific or detailed conversation between Gov. Siegelman and Mr. Scrushy.

My husband was questioned by Mr. Long and the other agent for some time . . . . The agents repeatedly and insistently told my husband that they "needed" for the meeting to have occurred at the particular and specific date, and that they wanted him to testify that it did. My husband maintained that he could not do so, as he did not know when the meeting occurred. They even attempted to persuade him that the meeting "could have" taken place on the date they stated, and reminded him that he had no calendar saying that it did not. After some of these exchanges, the federal prosecutor was brought into the room, and we were introduced . . . .

. . . .

Gov. Siegelman and Mr. Scrushy were subsequently indicted, tried, and convicted . . . .

In March of 2007, my husband was made aware that he was being investigated by the FBI, subsequent to questioning and subpoenas to certain individuals and business entities. He met with federal officials for more than five hours, answering their questions. In early June, days before the sentencing hearing for Gov. Siegelman and Mr. Scrushy, I answered a telephone call at home. Mr. Long identified himself and stated that they "needed" my husband to testify at the sentencing hearing. I replied that he must be confused, as my husband was being investigated by his cohorts in Birmingham, and would not be interested in helping him . . . .

Intermingled within these times were other ominous incidents involving U.S. Attorney Alice Martin and Bettye Fine Collins. For a number of years, it has been widely known within political circles that Ms. Martin desires an appointment to a federal judgeship. In pursuit of that goal, she has, unfortunately for Americans, allowed her office to be used for political purposes, initiating and carrying out prosecutions based upon political considerations, specifically targeting officials who are Democrats, particularly minorities, and those who have aligned themselves against certain Republicans. Having goals of prosecuting additional specific Democrats and minorities, Ms. Martin was hampered. As national attention became increasingly focused on the questionable

and selective actions of U.S. Attorneys throughout the country, Ms. Martin was in an untenable position. She needed to prosecute a Republican.

Bettye Fine Collins was a member of the Jefferson County Commission with a vendetta against my husband, and she had long maintained a file containing information to be used against him. But, more importantly to Ms. Martin, she was Alabama's Republican National Committeewoman. My husband and I were warned that Ms. Collins and Ms. Martin had discussions resulting in a plan that would satisfy each of their goals, and that Ms. Collins had boasted that she had persuaded and was insuring that Ms. Martin was to indict my husband. Ms. Martin, by satisfying Ms. Collins' demands, would deflect attention from her dastardly actions, while incurring Ms. Collins' support for an appointment to a federal judgeship, as Ms. Collins convinced Ms. Martin that, being national committeewoman, she was in a position to make that happen.

     Ms. Collins, more than anything else, wanted to be president of the county commission. Her goal had been thwarted in 2002, when my husband refused to vote for her, breaking ranks with the Republican majority, and casting the deciding vote for a Democrat who became the first minority president of the county commission, making himself, in the process, the perfect target for a Republican political prosecution as well as racist hatred. As the 2006 election cycle began, Ms. Martin's office, acting on fabrications and information emanating from Ms. Collins, began investigating my husband. The first subpoenas were served and grand jury testimony began as the qualifying process opened in January of 2006.

(Doc. 50-2.)

Defendant did not seek an evidentiary hearing on this claim, and declined to offer any other evidence.

To establish a claim for selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie:* (1) that while others

similarly situated have not generally been prosecuted for the type of crime(s) with which he has been charged, he has been singled out for prosecution; and (2) the government's selection of him for prosecution has been invidious or in bad faith, *i.e.,* based on such impermissible considerations as race or the exercise of constitutional rights. *United States v. Gordon,* 817 F.2d 1538, 1539 (11th Cir. 1987), *rev'd on other grounds* by *United States v. Gordon*, 836 F. 2d 1312 (11th Cir. 1988); *Unites States v. Anderson,* 574 F.2d 1347, 1349 n.1 (5th Cir.1978).

While the allegations of Mrs. White are serious and quite disturbing, they do not satisfy the first element of the claim. To a considerable extent, many of the statements are rank hearsay and thus inadmissible in a court of law. More importantly, the Defendant has failed to show that other public officials who have accepted bribes in North Alabama have not been prosecuted.  While the allegation is that only Democrats and black officials have been prosecuted, the fact is that others have been prosecuted for similar crimes by the United States Attorney for the Northern District of Alabama.[2]

With respect to the second element, it seems that there is at least *prima facie* evidence that this prosecution may have been influenced by impermissible

---

[2] The Court judicially notes that over the last five years, white public officials have been prosecuted for similar crimes by the United States Attorney for the Northern District of Alabama.

considerations. But the Court does not reach this issue because the Defendant has failed to satisfy the first element of his claim.

The motion to dismiss the indictment based on selective prosecution must be denied.[3]

### D. The Motion to Vacate

Conceding that the Eleventh Circuit has held that an objection to venue can be waived if not timely raised,[4] the Defendant has moved to vacate the judgment after implicitly consenting to the trial of this case in the Middle District of Alabama.

As a general rule, "the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18. However, a case may be transferred to another district either for prejudice, *i.e.,* the defendant cannot obtain a fair and impartial trial in the district where the offense allegedly occurred, or for the convenience of the parties and witnesses. But whether for prejudice or for

---

[3] In any event, the motion is untimely. An offer of proof of selective prosecution should be made as a pretrial motion to dismiss the indictment, rather than at trial or post-trial proceedings. Fed. R. Crim. P. 12(b). *See also United States v. Oaks,* 508 F.2d 1403 (9th Cir.1974); *United States v. Radetsky,* 535 F.2d 556 (10th Cir.1976)

[4] *United States v. Busto-Guzman,* 685 F.2d 1278 (11th Cir.1982); *United States v. Hankins,* 581 F.2d 431, 438 n.11 (5th Cir.1978).

convenience, the case may be transferred <u>only</u> on the defendant's motion.[5]

On November 20, 2007, the Defendant filed a Motion for a Change of Division.  The motion was based on the pervasive and prejudicial pretrial publicity surrounding the case.  In his motion, the Defendant pointed out that "[a] change of venue from one district to another, which is more than the Defendant seeks, is left to the sound discretion of the trial court."  (Doc. 16, p.7 n.3.)

Convinced that the Defendant could not receive a fair trial in the Southern Division of the Northern District, the Court considered the Defendant's suggestion that venue be changed to the Western Division (Tuscaloosa).  *The Birmingham News* and other Birmingham media also cover the Tuscaloosa area.

Three years earlier, the Court had commenced in Tuscaloosa the highly publicized trial of *United States v. Bobo,* No. 04-cr-0200-W (N.D. Ala 2004). *See also United States v. Bobo*, 395 F. Supp. 2d 1116 (N.D. Ala. 2004).  There, largely because of pretrial publicity by the Birmingham media, the Court felt it imperative

---

[5]    **(a) For Prejudice.** <u>Upon the defendant's motion</u>, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

   **(b) For Convenience.** <u>Upon the defendant's motion</u>, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice.

Fed. R. Crim. P. 21 (emphasis added).

to sequester the jury in order to afford the defendants their right to a fair trial. In the instant case, the Defendant's position was that "sequestration is onerous to the jury and government employees who must monitor the jury." (Doc. 16, p. 7.)

Therefore, exercising the judicial discretion which the Defendant had specifically mentioned, the Court decided that the nearest district free of prejudice was the Middle District of Alabama. The Court was also influenced by the fact that the Montgomery Federal courthouse is vastly more convenient for the parties and witnesses than any other courthouse in Alabama.

On December 12, 2007, the Court issued an order transferring the case to the Middle Division for trial. Neither the Defendant nor the Government filed any objection or sought any explanation of why the case had been transferred to Montgomery rather than Tuscaloosa. The case proceeded to trial in Montgomery on January 8, 2008. At the close of the Government's evidence, the Court orally granted the Defendant's motion for judgment of acquittal on Counts 10 and 11(relating to an alleged second conspiracy). The Defendant elected not to present evidence. The jury convicted the Defendant on the first nine counts of the indictment on January 10, 2008.

The Defendant objected to the transfer of the case to Montgomery for the first time on January 16, 2008.

In the Court's view, the Defendant's objection comes too late. To the extent that he is empowered to do so, he has waived his right to object to the change of district by having failed to timely assert it. If the Court has erred, the Defendant invited it by affirmatively representing that the court had the discretion to transfer venue to another district.

However, as noted above, the Rules of Criminal Procedure apparently do not authorize a judge to transfer a case to another district in the absence of a motion of the defendant.

Federal courts are courts of limited jurisdiction. It is fundamental that a "lack of federal jurisdiction cannot be waived or be overcome by an agreement of the parties." *Mitchell v. Maurer,* 293 U.S. 237, 244 (1934). Accordingly, the Supreme Court has recently reminded us that "it is the obligation of both district court and counsel to be alert to jurisdictional requirements." *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 593 (2004). Because every federal appellate court has a special obligation "to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it," this Court sees no reason to defer jurisdictional scrutiny for another day. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975(11th Cir. 2005) (quoting *Mitchell*, 293 U.S. at 244)). *See also Kirkland v. Midland Mortgage. Co.,* 243 F.3d 1277, 1279-80

(11th Cir. 2001).

Rather than giving the Defendant the opportunity to present this issue to the Court of Appeals and thus delaying the ultimate disposition of the case, the ends of justice would best be served by granting the motion to vacate. With considerable reluctance, the Court will do so.

Judge L. Scott Coogler has graciously consented to try the case in Tuscaloosa.

### Conclusions

By separate order, the Renewed Motion for Judgment of Acquittal, the Motion for a New Trial, and the Motion to Dismiss the Indictment will be denied. The Motion to Vacate the Judgment will be granted.

Done this 8th day of February, 2008.

                                                                        _____
                                                                        U.W. Clemon
                                                                        United States District Judge